WARREN B. P. WEEKS & others, trustees, *vs.* WILHELM-DEXTER COMPANY.

Suffolk.     November 13, 1914. — April 2, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Landlord and Tenant,* Covenants in lease. *Contract,* Construction. *Practice, Civil,* New trial. *Supreme Judicial Court.*

A covenant in a lease to a manufacturer of paints, shellac and oils, which he mixed and kept in the basement of the leased premises, that the lessee "will at the expiration of this lease remove all rubbish . . . and peacefully yield up . . . the premises . . . clean and in good repair, order and condition in all respects," is not repugnant to another covenant preceding it in the same lease, that the lessee will maintain the premises "in such repair, order and condition as the same are in at the commencement of said term or may be put in during the continuance thereof," and, if at the end of the term the floors of the leased premises are covered with a thick, irremovable, mucilaginous deposit that had accumulated during the terms of previous leases to the same lessee and was there at the beginning of this term, the lessee on giving up the premises is liable for the cost of putting the floors in good order and condition.

Where in an action of contract, at the trial of which the presiding judge ordered a verdict for the defendant, exceptions alleged by the plaintiff are sustained by this court, and it appears by the bill of exceptions that, under the instructions of the judge and the answers returned by the jury to questions put to them by

him, the damages which the plaintiff is entitled to recover have been assessed by the jury, there is no occasion for a new trial, and under St. 1913, c. 716, § 2, an order will be made for the entry of a judgment for the plaintiff in the sum found by the jury.

CONTRACT by the owner of a large building known as the Fort Hill Building, numbered from 142 to 146 inclusive, on High Street in Boston, against a corporation engaged in the manufacture and sale of paints, shellac and oils, which it had mixed and kept in the basement of the premises leased by it from the plaintiffs, for the alleged breach of a covenant in the lease from the plaintiffs to the defendant to remove all rubbish at the expiration of the lease and to yield up the premises to the lessors "clean and in good repair, order and condition in all respects." Writ in the Municipal Court of the City of Boston dated January 27, 1913.

Upon removal to the Superior Court the case was tried before *Hitchcock*, J. The material portions of the lease are quoted in the opinion. At the close of the evidence the plaintiffs asked the judge to make twelve rulings, of which the judge made the seventh, tenth and twelfth as quoted below, and refused to make any of the others including the third and fourth, which were as follows:

"3. That under the terms of the lease the defendant was bound on the expiration of the term to deliver and surrender to the plaintiffs the premises clean and in good repair, order, and condition.

"4. That under the terms of the lease the defendant was bound on the expiration of the term to deliver and surrender to the plaintiffs the premises clean and in good repair, order, and condition irrespective of the condition of said premises at the commencement of the term."

The rulings requested by the plaintiffs which were made by the judge were as follows:

"7. That the defendant was bound to surrender and deliver said premises clean and in good repair, order, and condition irrespective of any consideration of reasonable wear and tear whatsoever."

"10. That the plaintiffs are entitled to recover whatever sum it would cost to put the premises in the condition in which the defendant was bound to leave them."

"12. That the plaintiffs were not obliged to clean the floor if

the same was impracticable, but were legally entitled to install a new floor consistent with the general character of the building."

The judge submitted to the jury four questions, the first three of which, with the answers of the jury, were as follows:

"1. Were the premises in question left by the defendant at the expiration of the lease declared on clean and in good repair, order and condition in all respects?" The jury answered, "No."

"2. If question No. 1 is answered in the negative, what was the fair and reasonable cost in the most reasonably economical manner of cleaning the premises and putting them in good repair, order and condition in all respects after the termination of the tenancy of the defendant?" The jury answered, "$297."

"3. Were the premises in question left by the defendant at the expiration of the lease declared on (January 1, 1913), clean and in as good repair, order and condition in all respects as they were in on January 1, 1912, at the beginning of the term covered by the lease?" The jury answered, "Yes."

The fourth question became immaterial because it was required to be answered only in case the jury should answer the third question in the negative.

Upon receiving the answers of the jury the judge ordered a verdict for the defendant; and the plaintiffs alleged exceptions.

The case was submitted on briefs at the sitting of the court in November, 1914, and afterwards was submitted on briefs to all the justices.

*L. A. Ford & O. T. Russell,* for the plaintiffs.
*J. W. Spaulding & P. M. Lewis,* for the defendant.

BRALEY, J. The demised premises were occupied and used by the defendant for the manufacture and sale of paints, shellac, oils and similar compounds, and the answer of the jury to the third question establishes the fact that the basement and ground floors were in the same general condition at the end as at the beginning of the term.

But in addition to the covenant to maintain "the said premises, including the plumbing, in such repair, order and condition as the same are in at the commencement of said term or may be put in during the continuance thereof," the lessee further covenanted that it "will at the expiration of this lease remove all rubbish and all goods and effects of itself and of all persons claiming under it,

and peacefully yield up to the lessors, or to those having their estate therein, the premises and all erections and additions made to or upon the same, clean and in good repair, order and condition in all respects."

It is plain that under the first covenant the defendant was bound only to deliver the premises in the same good order and condition as at the date of the lease, reasonable use and wear excepted, and failure to do this would subject the lessee to damages, in a sum sufficient to put them in the required condition. *Watriss* v. *First National Bank of Cambridge*, 130 Mass. 343, 345.

The second covenant, however, is not repugnant to the first covenant. The defendant had been in occupation under previous leases during which the deposit on the floors of a thick, irremovable mucilaginous substance had accumulated and the lessee did no more than to covenant to restore the building to a rentable condition. By this construction all parts of the instrument are reconciled and full force and effect given to each covenant. *Ferguson* v. *Union Mutual Life Ins. Co.* 187 Mass. 8, 10, and cases cited. *Ball* v. *Wyeth*, 8 Allen, 275. *Hill* v. *Hayes*, 199 Mass. 411.

The jury having specially found that the lessee at the expiration of the lease failed to leave the premises "clean and in good repair, order and condition in all respects," the verdict for the defendant was ordered improperly.

If the jury found the covenant to have been broken, the measure of damages was specially submitted to them, in accordance with the plaintiffs' seventh, tenth and twelfth requests, and their other requests for rulings as to damages, not having been argued, are to be treated as waived.

It follows that, while the exceptions must be sustained, a new trial is not called for and the plaintiffs are to have judgment for the amount found by the jury, with interest from the date of the writ. St. 1913, c. 716, § 2.

*So ordered.*